*Birohard, J.
The questions involved in this case are not without difficulty. Although the legal principles embraced in the inquiry may not seem either numerous or difficult, they still are questions not very common to the courts of this state, and their proper application to any given state of facts is far less familiar than principles which, in themselves, are equally difficult, but of more frequent use.
As to what is the law of patents, we have safe guides in the numerous decisions of the courts of the United States; and for the pui'pose of applying the proof in the case with propriety, it may be well to bear in mind that the following leading principles have been authoritatively settled in construing the act of Congress, under which these thz*ee patents were granted:
1. A patent will be void if the thing patented had been in use, or had been described anterior to the supposed discovery.
2. If it include things both new and old.
3. If it be for a mere change of former proportions.
*398 4. It' it be for an effect only.
5. If the same effects were all produced by the application of machinery in separate parts, and the party merely combined them together, or added a new.
6. If it be frivolous or inapplicable to any beneficial use in society.
7. If it be for an improvement, the specification must state specifically in what it consists, and be limited to that; for if it be obscure or doubtful, so that the court can not say which is the particular improvement, and to what it is limited, it is void for ambiguity.
8. If it be for making an old thing out of new materials.
Trying the patents before us with these rules, the first in order of time is to S. Booth, dated August 20, 1833, “ for an improvement in constructing the water cistern.”
After specifying his improvement in terms, by describing things, which, as he claims, are both old and new, he gives this limit to his claim, viz :
*“ The before-described mode of constructing a hydraulic cement cistern, upon a rough wooden stock set up in the pit, without head or hoop, or being jointed, depending entirely upon the cement alone to hold the water.”
The whole specification describes at length, and minutely, the digging of a pit, and setting up staves loosely, and the filling them back with earth, laying a brick bottom, and covering the whole with cement.
Now, so far as the cement, as a material of construction, is concerned, or the digging of the pit, or the plastering on wood, or the making of a cistern of water-lime, or the dependence upon the water-lime alone, to hold the water, is concerned, the proof is clear, that all this was before known. There is here no new discovery.
Is there anything new in putting up the walls of these cisterns of wood ? The proof shows, that walls had, before the date of this alleged discovery, been constructed in this precise form of brick and other materials ; and that this improvement, that is, the pretended new part of it, consists merely in the substitution of one material for another, which is not patentable.
In a letter published in the Utica Almanac, August 15,1820, the writer describes the water-lime, and, among other things, says, *399 “that Judge Wright and Dr. Barrow, think, ‘that as it will adhere to shingles and boards as firmly'as to stone, it may constitute a covering for houses,’ impenetrable to rain, etc. That it will prove useful in forming floors for dairies, cellars, kitchens, etc., and in the construction of “ cisterns for holding water.”
It will be difficult for an ingenious mind, after reading this, to point to a new principle in this patent, which had not been before ■described or known, or to say in what his improvement consists.' It covers too much.
The patentee may not have been aware of it, but still he was not, as he supposed, the discoverer of anything that he claims. We are unanimously of opinion that this patent is void.
*The nest in order is H. J. Shumway’s patent, dated Norembor 19, 1833, for “ a new and useful improvement in making water cisterns, cider vats,” etc.
After giving his specifications at length, he sums up his invention, and thereby restricts bis claim, as follows :
“ 1. For plastering on earthy walls, instead of stone, brick, or wood, as heretofore or now practiced, and building water cisterns, which water may pass through, and be fitted to all uses:
“ 2. For applying said cement to the constructing and building of cider cisterns or vaults, tanners’ vats, salt vats, fish ponds, and other vaults and reservoirs for holding large quantities of liquids, for which said cement has not been used or known.
“ 3. For the use of gravel, to stiffen or harden the mortar, which has not been heretofore used in the manner above specified, or in any other, to form a cement, or to stiffen the mortar.”
Now. all of these things are included in the patent, and claimed to be Shumway’s new discovery.
■ The right must be maintained to the whole, or his patent covers too much, and is void. On this point, the evidence does not leave us in doubt. His claim for plastering on earthy walls was not new, nor a discovery by him. Joseph A. Roof testifies, that he had a cistern constructed in 1828, at Hagerstown, and the plastering was on an earthy surface; other witnesses corroborate him, establishing this fact. This, therefore, vitiates the whole patent.
But his second ground of claim is not less vicious. For he does not attempt to set forth how he will apply his cement to cider cisterns, and the other vessels named, so that the court, or a me *400 ehanic, or the public, could, by possibility, form any judgment whatever, whether it be new or old.
Now it is well known that water-lime has been applied to the construction of vats and cisterns for centuries. That its application in this manner was known to the eastern nations, before the discovery of Columbus; and, for aught we know, *they may have made use of them for holding large quantities of various kinds of liquids, precisely in the manner intended by the patentee. Mr. Shumway should have stated particularly his manner of using .this cement, in order to enable the public to determine the novelty of his supposed discovery, and to use what was before known without coming in conflict with his invention ; and also to enable courts and juries to judge whether he had embraced that to which he had no exclusive claim. His specification is silent on this point. This silence is fatal to the patent. It is probable that a minute description would have been equally fatal, by showing that no part of this claim was new.
His third claim is for the discovery of the use of gravel to stiffen the mortar, which the specification describes thus: “If, by means of springs or other causes, greater consistency of mortar is required than can be easily obtained by the mixture of water-lime, sand, and water, gravel may be used, either mixed with the mortar or sprinkled on, after having been plastered.” Were thin not a false claim, it would be difficult for a court to fell, from the» description, wherein this mode differs from the common mode of stiffening mortar by the use of sand and gravel, familiarly known to every mason who has lived within the last century; and this ambiguity also renders void this patent.
The third and last patent is Obadiah Parker’s, dated September 15, 1834, for a new and useful improvement on Samuel Booth’s patent, first above mentioned.
After specifying what his improvement is, he sums up and limits his patent in these words: “In forming and making the cistern of hydraulic cement, without having any wood or perishable matter left about it, and in the manner above specified, by the means of molds for the body and top, thereby making a more firm and perfect cistern, it being a complete jar; also in making it above ground, and as an improvement on said Booth’s patent.’’
The specification is lengthy, but its substance may be abbreviated. It consists, if the cistern is to be situated below the ^earth’s *401 surface, of plastering on the outside of a mold placed in the pit, so as to form the circumference of the cistern, and then filling back with earth, and removing the mold. If to be constructed above ground, by using a mold, which, when the mortar is hard, is to be removed.
That this invention is not new is shown by the testimony of G-eorge Olden, who knew water-lime, prior to 1834, to' have been used in constructing cisterns, both above and below ground, for plastering houses, making tombstones; and Dr. G-eorge Boerstler has seen it used in like manner, and for troughs, trunks of mills, etc. But these witnesses have seen it used upon brick, plank, or stone, without the perishable matter about it, so that it would, perhaps, be difficult to say from this testimony alone, that Parker had not made a new discovery in ascertaining that the cement alone might be depended on for forming the walls of the cistern. But when we look back at Booth’s patent, which is prior in time, we find him claiming also this identical principle. It is described in Booth’s patent, though not claimed, so as to be included in it. Although Parker disclaims anything which was patented to Booth, the fact is fatal to his patent, for he could not claim to be the discoverer of what was before known or described. It is not a more firm or perfect system than Booth’s, when his wood has rotted away. And were it not that Parker proposes to remove his wooden mold, before rotting, and Booth proposes to remove it by rotting, the difference between their cisterns, when constructed below ground, would be simply this, the one builds his cistern within his mold, the other without it, which, in point of principle, looks very like a frivolous matter.
Were this, however, insufficient to show the invalidity of the patent, there is, in the last clause, an exclusive claim set up to the-right of making cisterns above ground. This he is not entitled to,'if, as we are bound, we believe the witnesses, who had, years before, seen and- erected above the surface.
He claimed too much when he sought to appropriate that locality to himself, and was guilty of false suggestion.
*Then, if there be anything new in the whole matter, it is mixed up promiscuously with the old, rendering the patent void for ambiguity, and void, because it includes more than the discovery.
The patents being disposed of, the question turns upon com *402 plainant’s right to the relief sought. We are of opinion that the right is clear.
The notes given were negotiable; the consideration failed; and, though there may have been no fraud in fact, there was, in legal contemplation, a fraud committed, whore rights, in patents obtained upon a false suggestion, were sold, and transferred for a valuable consideration, to a person without knowledge of the facts. The notes, also, were liable to be so negotiated as to defeat all just equities, and bar a defense at law. Under such circumstances, a resort to a court of equity, without waiting a suit at law, or for the notes to be passed to bona fide holders, was justifiable. Having acquired jurisdiction for a lawful purpose, a court of equity will retain the cause, and do full justice between the parties. Some of the negotiable notes were assigned before they became due, and before the institution of this suit, to innocent purchasers, and have been paid by complainant, to the holders, since the suit was commenced. It is urged that a recovery back should not be had. We think the authorities are otherwise. It is a general principle, that when money, or other valuable, has been paid on a consideration which has entirely failed, it may be recovered back; that, in sales of personal property, there is an implied warranty that the vendor has title to the property. Hero, then, the defendant undertook to sell rights, as conferred by patents. A patent, if valid, confers .an exclusive right to use, vend, etc., and the dealers in such property (unless expressly stipulating to the contrary), ought ever to be held to the same implications which the law raises against the vendor of any species of personal property.
Decree for complainant.